ACCEPTED
03-16-00563-CV
13922444
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/22/2016 10:11:29 AM
JEFFREY D. KYLE
CLERK

NO. 03-16-00563-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/22/2016 10:11:29 AM
JEFFREY D. KYLE
Clerk

## IN THE THIRD COURT OF APPEALS
## AUSTIN, TEXAS

### BILLY WAYNE BASKETT,
*Appellant*

### V.

### LINNET SUE BASKETT,
*Appellee*

From County Court at Law No. 4
Williamson County, Texas
Trial Court Cause No. 14-1600-FC4

## BRIEF OF APPELLEE LINNET SUE BASKETT

James A. Vaught
State Bar No. 20526300
VAUGHT LAW FIRM, P.C.
5929 Balcones Drive, Suite 201
Austin, Texas 78731
(512) 342-9980 phone
(512) 610-9980 facsimile
e-mail: jimmy@vaughtlawfirm.com

ATTORNEY FOR APPELLEE
LINNET SUE BASKETT

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Rule 38.2 of the Texas Rules of Appellate Procedure, Appellee

provides the following information to this Court:

## APPELLANT

Billy Wayne Baskett

## APPELLATE COUNSEL FOR APPELLANT

Justin M. Jackson
1460 E. Whitestone Blvd., Suite 140
Cedar Park, Texas 78613
(512) 528-1900 phone
(866) 929-2838 facsimile

## APPELLEE

Linnet Sue Baskett

## APPELLATE COUNSEL FOR APPELLEE

Jimmy Vaught
VAUGHT LAW FIRM, P.C.
5929 Balcones Drive, Suite 201
Austin, Texas 78731
(512) 342-9980 phone
(512) 610-9980 facsimile
jimmy@vaughtlawfirm.com   e-mail

The foregoing information is also provided to assist the members of this Court

in determining issues of disqualification and recusal under Rule 16 of the Texas Rules

of Appellate Procedure.

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

> This is an enforcement action arising out of a divorce case. Appellant Billy Wayne Baskett failed to turn over property awarded to Appellee Linnet Sue Baskett, and damaged, destroyed, and defaced other property awarded to Linnet. Billy went so far as to deface some of Linnet's property with crude and obscene words. After an evidentiary hearing, the trial court held Billy in contempt and awarded Linnet damages in the amount of $12,161.14 and assessed attorney's fees against Billy in the amount of $7,500.00.

ISSUES PRESENTED.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS AND PROCEDURAL BACKGROUND. . . . . . . . . . . 2

    Billy Throws Linnet Out of the House Without Most of Her Property. . . . . 2

    Parties Settle Divorce in Mediation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    Linnet Attempts to Retrieve Her Property. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    Most of Linnet's Property Was Damaged, Defaced or Missing.. . . . . . . . . . 5

    Linnet Provides Evidence of Repair or Replacement Value
    of Missing and Damaged Property. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    Divorce Decree is Signed by the Court.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Linnet Files Petition for Enforcement of Property Division and
Trial Grants the Petition for Enforcement. . . . . . . . . . . . . . . . . . . . . . . . . . 10

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

I.
THE TRIAL COURT DID NOT ERR AND DID NOT SUBSTANTIVELY
MODIFY THE TERMS OF THE UNDERLYING AGREED FINAL DECREE
OF DIVORCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

II.
THE TRIAL COURT'S AWARD OF DAMAGES WAS SUPPORTED
BY LEGALLY AND FACTUALLY SUFFICIENT EVIDENCE. . . . . . . . 14

III.
THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT
AWARDED DAMAGES IN FAVOR OF LINNET SUE BASKETT. . . . . 16

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# INDEX OF AUTHORITIES

**Page**

## STATUTES AND RULES

TEX. FAMILY CODE § 3.003...................................... 14

NO. 03-16-00563-CV

IN THE THIRD COURT OF APPEALS
AUSTIN, TEXAS

**BILLY WAYNE BASKETT,**
*Appellant*
**V.**
**LINNET SUE BASKETT,**
*Appellee*

**BRIEF OF APPELLEE LINNET SUE BASKETT**

**TO THE HONORABLE COURT OF APPEALS:**

Linnet Sue Baskett, Petitioner in the trial court and the Appellee in this Court, respectfully submits her brief in support of the Order of Enforcement of Property Division signed on May 11, 2016.

**PRELIMINARY STATEMENT**

This is an enforcement action arising out of a divorce case. Appellant Billy Wayne Baskett ("Billy") failed to turn over property awarded to Appellee Linnet Sue Baskett ("Linnet"), and damaged, destroyed, and defaced other property awarded to Linnet. Billy went so far as to deface some of Linnet's property with crude and obscene words. After an evidentiary hearing, the trial court held Billy in contempt and

awarded Linnet damages in the amount of $12,161.14 and assessed attorney's fees against Billy in the amount of $7,500.00.

## ISSUES PRESENTED

### I.
**THE TRIAL COURT DID NOT ERR AND DID NOT SUBSTANTIVELY MODIFY THE TERMS OF THE UNDERLYING AGREED FINAL DECREE OF DIVORCE.**

### II.
**THE TRIAL COURT'S AWARD OF DAMAGES WAS SUPPORTED BY LEGALLY AND FACTUALLY SUFFICIENT EVIDENCE.**

### III.
**THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT AWARDED DAMAGES IN FAVOR OF LINNET SUE BASKETT.**

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

Linnet and Billy married in 2007. (CR 10). The parties initially separated in December 2013 and Linnet moved into an apartment. (RR Vol. 2, page 19, lines 24-25, page 20, lines 7-8). The parties attempted to reconcile and Linnet moved back into the house and unpacked all of her items. Almost immediately, Billy asked her to leave. (RR Vol. 2, page 20, lines 3-6, page 21, lines 10-19).

### Billy Throws Linnet Out of the House Without Most of Her Property

Linnet sought Billy's assistance in moving out of the house. Initially he agreed

and then on the day she was supposed to move, he refused. (RR Vol. 2, page 23, lines 8-18). Linnet didn't have much time to remove her property. She spent a whole day packing her property at his house before Billy threw her out. She was only able to remove a couple of carloads of her property. The rest of her property remained in Billy's house and he refused to let her have her property. (RR Vol. 2, page 23, lines 21-25, page 24, lines 1-6). Billy did not allow Linnet to go back to the house and retrieve her property. (RR Vol. 2, page 24, lines 7-9). The property that was not packed included her chest of drawers with all of her clothing, her massage table and massage products, some items in a bookcase, cards from her deceased grandparents, a lot of cards from grandparents and parents for birthdays and Christmas, cash in some of the card, and silver dollars she received as a child. (RR Vol. 2, page 24, lines 18-25, page 25, lines 1-15). The property that was packed included her personal kitchen items, china, glasses, wine glasses, and other items. Linnet purchased boxes and packing supplies to make sure that her valuables were packed properly and wouldn't break when moving. (RR Vol. 2, page 25, lines 17-25, Page 26, lines 1-3). All of her property was in perfect condition when Billy threw her out of the house. (RR Vol. 2, page 28, lines 14-19). Linnet unsuccessfully attempted to return to the house to retrieve her property. (RR Vol. 2, page 25, lines 4-9).

## Parties Settle Divorce in Mediation

In May 2015, the parties settled the case in mediation. The mediated settlement agreement awarded Linnet:

> W-2. The furniture and furnishings, clothing, personal effects and jewelry lawfully in her possession or subject to her control, as well as all items of her personal property, jewelry and clothing now in Husband's possession, and specifically including the following:
> a. The couch and love seat in Husband's living room;
> b. The 37-inch Television; and
> c. Wife's jewelry chest and all its contents.
>
> Wife shall be given access to such items for removal not later than June 27, 2015. The parties intend in good faith to schedule such move on June 27, 2015.

(RR Vol. 3, Exhibit 1, page 1).

## Linnet Attempts to Retrieve Her Property

On June 27, 2015,[1] Linnet, along with her sisters, her niece, her brother-in-law and a friend, went to the house to retrieve her property. When they arrived, they were shocked. Half of her items were stacked up and thrown in the driveway. Everything else was thrown in the front room. Billy moved her furniture into the front room and everything was shoved into the room and stacked on top of each other. Her property was not in the boxes she used to pack them - they had been opened and placed in

---

[1]The parties mistakenly testified that the date was July 27, 2015 when in fact it was June 27, 2015. (RR Vol. 2, page 119, lines 2-12).

different boxes and in bags. Boxes were crushed on top of things and her property was just demolished. The boxes were all opened and items were missing. (RR Vol. 2, page 27, lines 15-22, page 28, lines 20-25, page 29, lines 1-13, page 74, lines 9-13, page 79, lines 15-20, page 80, lines 2-4; RR Vol 4, Exhibit 4).[2] Billy had a friend at the house who refused to let anyone look through the house to see if there was anything else. In fact, they were only allowed in one room. (RR Vol. 2, page 76, lines 22-25, page 77, line1, page 81, lines 3-6, page 84, lines 4-7, page 119, lines 9-15). Although Linnet did not have a specific list of every single item she left in the house, she did have a general understanding of what she had left behind. (RR Vol. 2, page 29, lines 20-25, page 30, line 1). However, Billy knew what property in his possession was her property. (RR Vol. 2, page 95, lines 13-25).

## Most of Linnet's Property Was Damaged, Defaced or Missing

Although the couch was in perfect condition when she was thrown out, the couch had a broken frame and had a hole poked in the side that looked like it was intentionally done. One of the panels on a jewelry chest was kicked in and all of her good jewelry was missing. The missing jewelry included most of her hanging jewelry, a Tiffany necklace and bracelet, some gemstone jewelry (such as peridot and citrines),

---

[2]Exhibit 4 are photos of the house and illustrate how Linnet found many of the items at the house. (RR Vol. 2, page 44, lines 7-10).

some James Avery jewelry, some good jewelry, some Brighton jewelry, and her gold and silver. (RR Vol. 2, page 30, lines 11-25, page 31, lines 1-10, 14-25, page 32, lines 1-11).

Linnet also had a separate jewelry box which was at the house. When she arrived, it was empty. The missing items included jewelry from her childhood, her cruise card, her social security card, some Christmas cards with some money in them, and collectible things. It also included Christmas cards from her deceased grandparents. (RR Vol. 2, page 32, lines 12-25, page 33, lines 1-16). Linnet had left mail and packages behind when Billy threw her out of the house which were supposed to be in a small filing cabinet. The filing cabinet was empty and had been kicked in. (RR Vol. 2, page 33, lines 17-25, page 34, lines 1-13). The contents of her bedroom dresser were missing (including clothes, pajamas, socks, shorts and hosiery) and the drawers were stained inside like to cover up something. The dresser also had scratches and stain down the side. (RR Vol. 2, page 34, lines 14-25, page 35, lines 1-3). Her night stands were empty. When she left, they contained some sentimental items, two rosaries, and some books and cards. In addition, one of the night stands had the word "cunt" written on it. (RR Vol. 2, page 35, lines 4-23). This word was

written on numerous other items left at the house. (RR Vol. 5, Exhibit 5).[3]

Linnet's small bookcase was missing and many of her books were missing including eight photo albums from her childhood. Of the books that were there, some of them had pages torn out and some had crude and offensive language written in them. In addition, a wooden storage cube had the backing destroyed. (RR Vol. 2, page 35, lines 24-25, page 36, lines 1-24).

Numerous items which were previously in the bedroom were missing, damaged or defaced with the C-word. For example, the credenza was scratched, had a broken drawer and was stained inside. Many of the items that Linnet had boxed up before Billy threw her out had been "re-boxed." The items that Linnet had boxed were bashed and crushed beyond recognition. (RR Vol. 2, page 37, lines 5-24, page 38, lines 1-14). In addition, many items which were previously in the living room were missing including a collection of dolls from childhood, some crock pots, some curtains and curtain rods, a lot of Mikasa wine glasses and pictures and pots. (RR Vol. 2, page 38, lines 15-25, page 39, lines 1-5).

Linnet's Haro bicycle at the house was destroyed; it had gashes in it, the chain

---

[3]Exhibit 5 are photos illustrative of the items that Billy wrote obscenities and the C-word. Linnet testified that the obscenities appeared to be in Billy's handwriting. (RR Vol. 2, page 45, lines 15-21, page 46, lines 6-10; RR Vol. 5, Exhibit 5). In addition, after the divorce was filed, Billy inscribed the C-word on her front door and spray painted it on her garage door. (RR Vol. 2, page 47, lines 5-16).

was mangled and rusty, and all of the accessories were broken off. It had recently been reconditioned and service and in perfect condition when Billy threw her out of the house. Some of the Christmas totes and decor were missing including cat ornaments that Linnet's family gave her each year, and other house decor. (RR Vol. 2, page 39, lines 12-25, page 40, lines 1-14).

From the time that Billy threw Linnet out of the house until she retrieved her property on July 27, 2015, her property was in Billy's home and subject to his control. (RR Vol. 2, page 27, lines 6-14, page 68, lines 1-3, page 122, lines 14-23). In fact, Billy admitted damaging and defacing some of the property. (RR Vol. 2, page 97, lines 6-13, page 105, lines 11-25, pate 106, lines 1-5, page 108, lines 4-6).

**Linnet Provides Evidence of Repair or Replacement Value
of Missing and Damaged Property**

Linnet personally researched every item listed in the motion for enforcement regarding the property that could be either repaired or replaced. She used online research such as Ebay to determine the value of items could not be purchased and for the items that could be replaced, she printed out information from stores and how to replace the items. Linnet did not seek out the most expensive item, but looked for comparable items. Of course, she could not put a value on her lifelong photo albums, her keepsakes and her cards. (RR Vol. 2, page 40, lines 15-25, page 41, lines 1-10,

page 63, lines 23-25. Page 64, lines 1-18; RR Vol. 3, Exhibit 3). Based upon her research regarding the items that were either missing or damaged beyond repair, the total cost of repair or replacement was $12,161.14. (RR Vol. 2, page 43, lines 2-9; RR Vol. 3, Exhibit 3).

## Divorce Decree is Signed by the Court

The Agreed Final Decree of Divorce was signed in November 2015. (CR 57).

Among other things, the Decree of Divorce provided:

> LINNET SUE BASKETT, Respondent, is awarded the following as Respondent's sole and separate property, and BILLY WAYNE BASKETT, Petitioner, is divested of all right, title, interest, and claim in and to such property:
>
> 1. The household furniture, furnishings, fixtures, goods, appliances, equipment, electronics, computers, clothing, personal effects and jewelry lawfully in LINNET SUE BASKETT's possession or subject to the sole control of LINNET SUE BASKETT, as well as all items of her personal property, jewelry and clothing now in BILLY WAYNE BASKETT's possession, and specifically including the following:
>
>    a. The couch and love seat in BILLY WAYNE BASKETT's living room;
>    b. The 37-inch Television; and
>    c. LINNET SUE BASKETT's jewelry chest and all its contents.
>
> IT IS ORDERED, LINNET SUE BASKETT shall be given access to such items for removal not later than June 27, 2015. The Court finds the parties intend in good faith to schedule such move on June 27, 2015.

(CR 60-61).

## Linnet Files Petition for Enforcement of Property Division and Trial Grants the Petition for Enforcement

On November 25, 2015, Linnet filed a Petition for Enforcement of Property Division and for Contempt and/or Sanctions. (CR 78-85). After an evidentiary hearing before the Honorable John B. McMaster on January 28, 2016, Judge McMaster found that Billy was in contempt for each separate violation and awarded Linnet a judgment against Billy in the amount of $12,161.14 and ordered that Billy pay attorney's fees in the amount of $7,500.00. (RR Vol. 2, page 130, lines 14-18). The Order of Enforcement of Property Division was signed on May 11, 2016. (CR 98-105).

## SUMMARY OF THE ARGUMENT

The Trial Court did not amend, modify, alter or change the division of property. The Agreed Final Decree unambiguously awarded Linnet "all items of her personal property, jewelry and clothing now in BILLY WAYNE BASKETT's possession" including "[t]he couch and love seat in BILLY WAYNE BASKETT's living room," [t]he 37-inch Television," and "LINNET SUE BASKETT's jewelry chest and all its contents. It was not limited to the couch, love seat, the television and the jewelry chest.

Billy incorrectly argues that there is no evidence that 89 of the items that Linnet was awarded damages for were community property. It is undisputed that property possessed by either spouse during the marriage is presumed to be community property. It is also undisputed that the degree of proof necessary to establish the property is separate property is clear and convincing evidence. When Billy's counsel asked Linnet about the characterization of certain property, Linnet's trial counsel objected. "My objection, Judge, it's asking for her to make a legal conclusion on a characterization." The Trial Court sustained the objection. The same applies to a couple of other times when Billy's counsel asked Linnet whether something was her separate property. In reality, Billy's "proof" is not clear or convincing evidence.

Assuming that Billy is accurate about the separate property, which Linnet vigorously denies, he has not only damaged, defaced and disposed of her community property items but has damaged, defaced and disposed of her separate property items which the court didn't have the authority to award to Billy.

The Trial Court did not abuse its discretion when it awarded Linnet damages for the missing property and the property that Billy damaged, destroyed, and defaced. Linnet personally researched every item listed in the motion for enforcement regarding the property that could be either repaired or replaced. She used online research such as Ebay to determine the value of items could not be purchased and for

the items that could be replaced, she printed out information from stores and how to replace the items. Linnet did not seek out the most expensive item, but was looking for comparable items. Linnet offered an 87 page exhibit with the results of her research. Of course, she could not put a value on her lifelong photo albums, her keepsakes and her cards. In addition, the Trial Court did not abuse its discretion in awarding attorney's fees.

## ARGUMENTS AND AUTHORITIES

### I.
### THE TRIAL COURT DID NOT ERR AND DID NOT SUBSTANTIVELY MODIFY THE TERMS OF THE UNDERLYING AGREED FINAL DECREE OF DIVORCE.

[In Response to Appellant's Issue 1]

Contrary to Billy's conclusory arguments, the Trial Court did not amend, modify, alter or change the division of property.

The mediated settlement agreement awarded Linnet:

W-2. The furniture and furnishings, clothing, personal effects and jewelry lawfully in her possession or subject to her control, *as well as all items of her personal property, jewelry and clothing now in Husband's possession*, and specifically including the following:
   a.   The couch and love seat in Husband's living room;
   b.   The 37-inch Television; and
   c.   Wife's jewelry chest and all its contents.

(Emphasis added). The Agreed Final Decree of Divorce awarded Linnet:

1. The household furniture, furnishings, fixtures, goods, appliances, equipment, electronics, computers, clothing, personal effects and jewelry lawfully in LINNET SUE BASKETT's possession or subject to the sole control of LINNET SUE BASKETT, *as well as all items of her personal property, jewelry and clothing now in BILLY WAYNE BASKETT's possession*, and specifically including the following:

   a. The couch and love seat in BILLY WAYNE BASKETT's living room;
   b. The 37-inch Television; and
   c. LINNET SUE BASKETT's jewelry chest and all its contents.

(Emphasis added). Furthermore, the Agreed Final Decree of Divorce awarded

Billy:

1. The household furniture, furnishings, fixtures, goods, appliances, equipment, electronics, computers, clothing, personal effects and jewelry lawfully in BILLY WAYNE BASKETT's possession or subject to the sole control of BILLY WAYNE BASKETT, **SAVE AND EXCEPT** *all items of LINNET SUE BASKETT's personal property, jewelry and clothing now in BILLY WAYNE BASKETT's possession*, and specifically including the following:

   a. The couch and love seat in BILLY WAYNE BASKETT's living room;
   b. The 37-inch Television; and
   c. LINNET SUE BASKETT's jewelry chest and all its contents.

(CR 58) (Emphasis added).

The Agreed Final Decree unambiguously awarded Linnet "all items of her personal property, jewelry and clothing now in BILLY WAYNE BASKETT's

possession" including "[t]he couch and love seat in BILLY WAYNE BASKETT's living room," [t]he 37-inch Television," and "LINNET SUE BASKETT's jewelry chest and all its contents." Clearly the property awarded to Linnet which was in Billy's possession was not limited to the couch, love seat, her jewelry chest and the television. As a result, the Trial Court did not amend, modify, alter or change the division of property.

## II.
## THE TRIAL COURT'S AWARD OF DAMAGES AND ATTORNEY'S FEES WAS SUPPORTED BY LEGALLY AND FACTUALLY SUFFICIENT EVIDENCE.

[In Response to Appellant's Issue 2]

Billy argues that there is no evidence that 89 of the items that Linnet was awarded damages for were community property. He is incorrect for several reasons.

First, it is undisputed that property possessed by either spouse during the marriage is presumed to be community property. It is also undisputed that the degree of proof necessary to establish the property is separate property is clear and convincing evidence. TEX. FAMILY CODE §3.003. Billy's "proof" that some of Linnet's personal property that he damaged and defaced was her separate property is sketchy at best. In fact, Linnet's trial counsel objected when Billy's counsel asked Linnet about the characterization of certain property. "My objection, Judge, it's

asking for her to make a legal conclusion on a characterization." The Trial Court sustained the objection. (RR Vol. 2, page 59, lines 7-16). In reality, the same applies to a couple of other times when Billy's counsel asked Linnet whether something was her separate property. Furthermore, Billy's "proof" is not clear and convincing evidence.

Second, Billy's argument about separate property and community property doesn't make sense. It is undisputed that the Agreed Final Decree unambiguously awarded Linnet "all items of her personal property, jewelry and clothing now in BILLY WAYNE BASKETT's possession." Billy failed to turn over Linnet's personal property, and damaged, destroyed, and defaced Linnet's other property. Billy went so far as to deface some of Linnet's property with crude and obscene words.

Assuming that Billy is accurate about the separate property, which Linnet vigorously denies, he has not only damaged, defaced and disposed of her community property items but has damaged, defaced and disposed of her separate property items which the court didn't have the authority to award to Billy. In addition, Billy cannot claim that he didn't know the property for which damages were sought because the property was specifically identified in the Petition for Enforcement of Property Division and for Contempt and/or Sanctions.

## III.
## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT AWARDED DAMAGES IN FAVOR OF LINNET SUE BASKETT AND ATTORNEY'S FEES.

[In Response to Appellant's Issue 3]

The Trial Court did not abuse its discretion when it awarded Linnet damages for the missing property and the property that Billy damaged, destroyed, and defaced. Billy argues that Linnet sought and obtained damages for the cost of new items which were at least several years old. In reality, Linnet personally researched every item listed in the motion for enforcement regarding the property that could be either repaired or replaced. She used online research such as Ebay to determine the value of items could not be purchased and for the items that could be replaced, she printed out information from stores and how to replace the items. Linnet did not seek out the most expensive item, but was looking for comparable items. Linnet offered an 87 page exhibit with the results of her research. Of course, she could not put a value on her lifelong photo albums, her keepsakes and her cards. Based upon her extensive research regarding the items that were either missing or damaged beyond repair, the total cost of repair or replacement was $12,161.14.

Billy focused on several specific items including the couch and love seat. Although the couch was in perfect condition when she was thrown out, the couch had

a broken frame and had a hole poked in the side that looked like it was intentionally done. In fact, Billy admitted that he broke the frame when he dragging it from the garage to the driveway. (RR Vol. 2, page 98, lines 24-25, page 99, lines 1-6). Contrary to Billy's argument, Linnet valued the couch and love seat at approximately 50% of the retail purchase price. (RR Vol. 3, Exhibit 3).

Billy also focused on the jewelry chest and the jewelry which he asserts that he did not take. However, Linnet unequivocally testified that one of the panels on a jewelry chest was kicked in and all of her good jewelry was missing including most of her hanging jewelry, a Tiffany necklace and bracelet, some gemstone jewelry (such as peridot and citrines), some James Avery jewelry, some good jewelry, some Brighton jewelry, and her gold and silver. Linnet's personal research supported the value placed on the jewelry chest and the missing jewelry.

Billy also complained about the Haro bicycle. Linnet's Haro bicycle at the house was destroyed; it had gashes in it, the chain was mangled and rusty, and all of the accessories were broken off. It had recently been reconditioned and serviced and in perfect condition when Billy threw her out of the house. Linnet's personal research supports the value placed on the bicycle.

In addition, the Trial Court did not abuse its discretion in awarding attorney's fees. The testimony and evidence offered by Linnet's counsel at trial was sufficient

to support the attorney's fee award of $7,500.00. Her counsel testified that she has been a practicing lawyer for 24 years, is board certified in family law, and is familiar with the reasonable and customary attorney's fees charged in family law matters and in pursuing a motion for enforcement. She also testified concerning her hourly rate and that the total amount charged was $7,528.15 which did not include charges for the time spent that day. Her trial counsel also offered her redacted bills. (RR Vol. 2, page 86, lines 14-25, page 87, lines 1-18; RR Vol. 5, Exhibit 9). Linnet pled for and properly was awarded attorney's fees.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Linnet Sue Baskett respectfully requests that this Court affirm the Order of Enforcement of Property Division signed on May 11, 2016 and that this Court grant Linnet Sue Baskett such other and further relief as to which she may show herself to be justly entitled.

Respectfully submitted,

VAUGHT LAW FIRM, P.C.
5929 Balcones Drive, Suite 201
Austin, Texas 78731
(512) 342-9980
(512) 610-9980 Fax

By:   /s/*Jimmy Vaught*
        James A. Vaught
        State Bar No. 20526300
        jimmy@vaughtlawfirm.com

Leigh de la Reza
State Bar No. 24037879
leigh@vaughtlawfirm.com

Lisa Stewart
State Bar No. 24029851
lisa@vaughtlawfirm.com

ATTORNEYS FOR
LINNET SUE BASKETT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Appellee's Brief has been served upon opposing counsel, Justin M. Jackson, 1460 E. Whitestone Blvd., Suite 140, Cedar Park, Texas 78613 via E-Service or *via* facsimile to: (866) 929-2838 on this 21st day of November, 2016.


*/s/Jimmy Vaught*
Jimmy Vaught


## CERTIFICATE OF COMPLIANCE

I hereby certify that this Appellee's Brief contains 3,941 words excluding the caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix.


*/s/Jimmy Vaught*
Jimmy Vaught